UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| KENT SCHOOL DISTRICT, a Washington municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>N.H. and D.M., and their minor daughter, C.M.,<br><br>Defendants. | ) | CASE NO. C16-0492RSM<br><br>MEMORANDUM OPINION |

## I. INTRODUCTION

This matter comes before the Court on Kent School District's appeal of a ruling in an administrative proceeding pertaining to the education of minor student C.M. The District appeals that portion of Administrative Law Judge ("ALJ") Michelle Mentzer's decision holding that the individualized education program ("IEP") for the 2015-2016 school year was substantively inappropriate and therefore denied C.M. a free appropriate public education ("FAPE"). Dkt. #14. This Court held oral argument and an evidentiary hearing on November 2, 2016, taking into evidence testimony by way of the Declarations submitted with the parties' briefing. Having now considered the parties' briefs, the arguments presented at hearing, the administrative record, and all other evidence of record, the Court finds and concludes as follows.

## II. BACKGROUND

The Student, C.M., is a seven-year-old second grader attending school in the Kent School District. AR at 403.[1] She is eligible for special education and related services under the category of Health Impairments and requires one-to-one (1:1) adult assistance to support her physical needs. *Id.* at 403, ¶ ¶ 2-3. She attends school in a self-contained program called the Adaptive Support Center ("ASC"). *Id.* at ¶ 2. The Student's individualized education program ("IEP") describes her as sweet-natured and happy, and states that she loves to interact socially with teachers and peers. *Id*. The student suffers numerous, severe health issues as described by the ALJ in her Findings of Fact at ¶ 3. AR 403-404.

During her kindergarten year (2014-2015), the Student's IEP provided for a 1:1 paraeducator to support her. *Id*. at 405, ¶ 3. During that year, the Student suffered five accidents at school that ultimately led the Parents to request a change of school and change of staffing for the Student. One of the accidents involved damage to the Student's wheelchair, and the other four accidents involved the Student's G-Tube, which ultimately required the Student to undergo multiple surgeries to remedy. *Id.* at 405-406, ¶ ¶ 12-15. Thus, toward the end of the Student's kindergarten year, on May 29, 2015, the Student's Parents withdrew the Student from school after she was severely injured at school the previous day. *Id*. at 406, ¶ 16.

The ALJ determined that the Student's withdrawal was in part because the student's paraeducator resigned and was not replaced, and in part because the parents did not feel it was safe to return the Student to school. The District asserts that the Student's withdrawal made her 1:1 paraeducator's position unnecessary and the paraeducator resigned effective June 1, 2015. Principal Eric Richards testified that once C.M. withdrew, the paraeducator no longer had a

[1] The Administrative Record in this matter is contained at Docket No. 11, and was filed with the Court in paper form. The Court will refer to this record as "AR" for ease of reference.

position at the school. Dkt. #16. Human Resource Director Robert Humes testified that once the Student withdrew, the paraeducator's position at the elementary school was eliminated. Dkt. #15. Because the paraeducator had applied earlier in the year for another position in the District, she was eligible to move to a new position. The position, however, was under a different collective bargaining unit, so she was required to resign, rather than simply transfer to a new position. *Id.* She was ultimately hired as a substitute bus driver effective August 31, 2015. *Id.* To the extent that the Parents assert the paraeducator resigned because she got a new job, the new position and start date support the District's contention that the paraeducator resigned as a result of the Student's withdrawal and not because she had been offered a new job. However, the Parents assert they were told the paraeducator resigned due to guilt associated with the G-Tube incident.[2] Dkt. #17-1 at ¶ 4. Regardless of the reason, there is no dispute that the Student was withdrawn from School on May 29, 2015, and did not attend school for the remainder of that school year.

In June 2015, the parties participated in mediation to resolve their differences concerning the services the District would provide the Student going forward. AR at 406, ¶ 17. They entered into a mediation agreement requiring, *inter alia*, that the Student's IEP would provide her a 1:1 nurse instead of a 1:1 paraeducator. *Id.* The District subsequently amended the Student's IEP in conformance with the mediation agreement to provide the Student with daily access to a 1:1 nurse at school and on the school bus. *Id.*

On June 8, 2015, the District issued a Prior Written Notice ("PWN") proposing to amend the Student's IEP to incorporate the mediation agreement. AR 529. The PWN stated:

> [Student] will be served by a licensed nurse for her educational and medical needs at school, rather than a 1:1 para professional. In the event that a nurse

---

[2] That statement is hearsay, and there is no other evidence supporting that assertion in the record.

> is not available on a given day, [Student's] parent will be notified and have the option to attend school with her daughter.

*Id.*

After additional discussions surrounding the provision of a 1:1 nurse on the days that the Student's nurse is absent from school, the District issued a PWN on September 1, 2015, refusing to change the IEP as suggested by the parents. The PWN stated that it had considered "providing a nurse if one is unavailable for a given school day." AR 612. The District refused the proposal on the basis that it had already reached an agreement during the mediation that if a nurse was unavailable, the Student's parent would have the option of attending school with the Student that day. *Id.*

In October, the Student's annual IEP was discussed, as the one in place at the time was set to expire. AR 719. After the IEP meeting, the District issued a PWN on October 21, 2015, proposing to initiate an annual IEP, and noting that "[Parents] are concerned that a substitute nurse is not called when [Student's] 1:1 nurse is absent. Without a substitute nurse, [Student] is not able to attend school unless a parent attends with her. They disagree with this and want it to be discussed further." *Id.*

After additional discussions, the District issued another PWN, dated October 28, 2015, proposing to continue the IEP as written, and document the Parents' handwritten notes that they had written in the sections of accommodations/modifications and Special Education and Related Services. AR 723. Specifically, those notes read, "Access/Use of 1:1 licensed nurse – daily – means everyday. This should include days when her regular nurse is absent. . . ."

AR 723.

In the meantime, the Student's parents requested a Due Process hearing with the Office of Superintendent of Public Instruction ("OSPI"). AR 622-623. It is not clear when the request

was submitted; however, the mother dated the request September 24, 2015, and the father dated the request September 25, 2015. AR 623. The Student's nurse was absent for the first time on September 28, 2015. AR 591. OSPI received the hearing request on September 29, 2015. AR 622.

The issues identified by ALJ Mentzer for hearing were:

> 1. Whether the District violated the Individuals with Disabilities Education Act (IDEA) and denied the Student a free and appropriate public education (FAPE) by:
>
>    a. Failing to provide a one-on-one (1:1) nurse for the Student when her regular nurse is absent, resulting in the Student being unable to attend school;
>
>    b. Allowing the Student's 1:1 nurse to attend to other student(s) on the bus, in violation of the Students individualized education program (IEP) . . . .

AR at 403.

The hearing before ALJ Mentzer was held on December 8 and 9, 2015. AR 402. The District asserts that because the issues identified for hearing pertained only to the 2015-2016 school year, and were narrowly drawn around the District's provision of 1:1 nursing services called for in the Student's 2015-2016 IEP, the District was not on notice and had no way of anticipating that the ALJ would make key factual findings and legal conclusions based on the Student's withdrawal from the District near the end of the 2014-2015 school year and the availability of her 1:1 paraeducator during that time. Dkt. #14 at 3-4. Therefore, the District did not identify or call any witnesses or submit any evidence regarding that issue. *Id.* The District further asserts that the Parent unexpectedly testified that the Student's 1:1 paraeducator resigned on May 29, 2015, not June 1, 2015, and that the District was unwilling or unable to replace the 1:1 paraeducator. *Id.* The Parent further testified that the 1:1 paraeducator's

resignation was a primary factor in her decision to withdraw the Student from school on May 29, 2015, which resulted in the Student missing the last two weeks of the school year. *Id.* The District argues that not only was this testimony unexpected, it was factually incorrect. As noted above, it is the District's position that the 1:1 paraeducator actually resigned on June 1, 2015, as a result of the Student's May 29, 2015, withdrawal from the District. Dkts. #15 at 1-2 and Ex. A thereto and #16 at 1-2 and Ex. A thereto.

The ALJ issued her decision on January 7, 2016. AR at 402. In her decision, the ALJ found:

> During kindergarten, the Student's 1:1 paraeducator was absent on four days through late-May, then she resigned on May 29, 2015, resulting in the Student being unable to attend school for the remaining 15 school days of kindergarten. The student missed 11% of kindergarten school days as a result (19 school days out of 180).

AR 405 at ¶ 11 (citations omitted). The ALJ relied on the Mother's testimony in support of this finding. *Id.* The ALJ further found:

> After the final accident of May 28, 2015, the Student did not return to school for the remainder of the school year. This was partly because the 1:1 paraeducator resigned the next day and was not replaced, and partly because the Parents did not feel it was safe to return the Student to school given all of the accidents that had occurred. . . .

AR 406 at ¶ 16. The ALJ also relied on the Mother's testimony in support of this finding. *Id.*

Those findings were then referenced in the ALJ's Conclusion that:

> The absence of a back-up plan for a substitute when the Student's 1:1 nurse is absent renders the Student's educational plan inappropriate. Any staff person may become injured or ill at any time. They may also take vacation days, resign, be discharged, or transfer. Any of these circumstances can result in prolonged absences, as well as individual days of absence. Last year, the Student could not attend school for 11% of the school year due to the absence of her 1:1 paraeducator. Paraeducators are easier to replace with substitutes than nurses are, according to District witnesses, and so the lack of a plan for substitutes is even more inappropriate this year than last year.

AR at 413, ¶ 9.

As a remedy, the ALJ ordered that the District provide compensatory education to the Student for the two days of school the Student's 1:1 nurse was absent, and provide the Student with 1:1 adult support in the form of a substitute nurse or two appropriately trained substitute paraeducators on days when her regular 1:1 nurse is absent.[3] *Id*. at 417-418, ¶ ¶ 25-27.

The District then filed the instant action in this Court, appealing that portion of the decision holding that the IEP for the 2015-2016 school year was substantively inappropriate and therefore denied C.M. a FAPE. Dkt. #14.

## III. DISCUSSION

### A. IDEA and Relevant State Law

The IDEA mandates that children with disabilities receive a free appropriate public education or "FAPE." 20 U.S.C. § 1400(d)(1)(A). State statutes and regulations supplement the requirements of the IDEA and its implementing regulations. *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 433 (9th Cir. 2010).

A FAPE entails special education and related services (1) provided at public expense, under public supervision and direction, and without charge; (2) meeting the standards of the State educational agency; (3) including an appropriate preschool, elementary, or secondary school education; and (4) provided in conformity with an IEP. 20 U.S.C. § 1401(9). To provide a FAPE, a state educational agency must evaluate a student, determine eligibility, conduct and implement an IEP, and determine an appropriate educational placement. *J.W.*, 626 F.3d at 432 (citing 20 U.S.C. § 1414).

[3] The District has complied with the remedies ordered and does not appeal the remedies through this action.

An IEP is a written statement, produced annually by a local education agency and designed in conjunction with a disabled child's parents, teachers, and other relevant parties. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993). It must contain, *inter alia*, statements of the child's performance, measurable goals, criteria for measuring progress, services, aids, modifications, and supports to be provided, an explanation of the extent a child will not participate with nondisabled children in class or other activities, accommodations necessary to measure achievement and performance, and details regarding the timing, frequency, location, and duration of services and modifications. 20 U.S.C. § 1414(d)(1)(A)(i).

Placement decisions are to be made by a group of persons, including parents, knowledgeable about the child, the meaning of the evaluation data, and the placement options, and must be determined at least annually, based on the child's IEP, and be as close as possible to the child's home. 34 C.F.R. § 300.116; WAC 392-172A-02060. There must be consideration of the "least restrictive environment" ("LRE"), 20 U.S.C. § 1412(a)(5); 34 C.F.R. §§ 300.114, 300.116(a)(2); WAC 392-172A-02050, and, unless the IEP requires otherwise, a child should be educated in the school he or she would attend if not disabled, 34 C.F.R. § 300.116; WAC 392-172A-02060. There should be a reasonably high probability of assisting the student to attain annual goals, and consideration of any potential harmful effect on the student or the quality of services needed. WAC 392-172A-02060.

IDEA compliance entails both procedural and substantive components: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Board of Educ. v. Rowley*, 458 U.S. 176, 206-07, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982) (footnote omitted). Procedural prescriptions include, *inter*

*alia*, timelines and the provision of notice and an opportunity to be heard. *See J.S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1182 (W.D. Wash. 2002). Substantively, education must be appropriately designed and implemented such that it provides a "'meaningful' benefit." *J.W.*, 626 F.3d at 432-33 (quoting *Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999)). *Accord M.M. v. Lafayette Sch. Dist.*, 767 F.3d 842, 852 (9th Cir. 2014), *amended opinion at* 2014 U.S. App. LEXIS 18979 (Oct. 1, 2014).

An appropriate public education under the IDEA does not "mean the absolutely best or 'potential-maximizing' education for the individual child." *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir. 1987) (quoting *Rowley*, 458 U.S. at 197 n.21). A school district must provide "'a basic floor of opportunity' through a program 'individually designed to provide educational benefit'" to the child. *Id.* (quoting *Rowley*, 458 U.S. at 201).

**B. Burden of Proof**

As the party seeking relief at the administrative level, the Parents bore the burden of proof in challenging the IEP, and specifically that the District's denial of their request for a substitute nurse made the IEP inappropriate. *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 819-20 (9th Cir. 2007) (citing *Schaffer v. Weast*, 546 U.S. 49, 62, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005)). Likewise, as the party challenging the administrative decision on appeal in this Court, the School District bears the burden of demonstrating that the ALJ's decision should be reversed. *J.W.*, 626 F.3d at 438.

**C. Standard of Review**

When reviewing an administrative decision under the IDEA, the Court applies a modified *de novo* standard of review. *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034 (1982); *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist.*

*5J*, 502 F.3d 811, 817 (9th Cir. 2007) ("[C]omplete de novo review of the administrative record is inappropriate."); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471–73 (9th Cir. 1993); *Miller v. Monroe Sch. Dist.*, 131 F.Supp.3d 1107, 1112 (W.D. Wash. 2015). Under this standard, "the court may give less than the usual deference to the administrative hearing officer's findings of fact." *N.B. v. Hellgate Elementary Sch. Dist., ex rel. Bd. of Directors, Missoula Cty., Mont.*, 541 F.3d 1202, 1212 (9th Cir. 2008).

The Court receives and reviews the administrative record, and may hear additional evidence if a party so requests. The Court then utilizes a preponderance of the evidence standard to determine the appropriate relief. 20 U.S.C. § 1415(i)(2)(C).

**D. Argument and Analysis**

At the center of the current appeal is a determination of the correct analysis to apply to the issues that were before the ALJ. The parties do not agree on the applicable analysis. The District argues that this matter should be viewed as a failure to implement the IEP - that is, whether the District failed to implement the provision of the Student's IEP that called for the daily provision of a 1:1 nurse on the days when the nurse was absent. Accordingly, it asserts that in analyzing staff absences which result in a loss of service to a student as a failure to implement the student's IEP, the Ninth Circuit has held that a school district denies a student FAPE "when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." Dkt. #14 at 5 (citing *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007). The District further argues that the ALJ erred when she did not apply this failure to implement standard:

> Without ever analyzing whether the absence of the 1:1 nurse for the two days during the 2015-2016 school year constituted a material failure to implement the Student's 2015-2016 IEP, she ruled that the IEP was deficient when drafted because it did not contain a back-up plan for the

> possibility that the 1:1 nurse might be absent during the year. The ALJ's failure to apply the Ninth Circuit standard for analyzing staff absences and her related ruling that the Student's 2015-2016 IEP was inappropriate were erroneous and are the subject of this appeal.

Dkt. #14 at 6.

The Parents argue that this matter does not involve a failure to implement, but rather involves a substantively inappropriate IEP because the backup plan for the regular 1:1 nurse prevented the Student from receiving a FAPE. Accordingly, they assert that the ALJ appropriately examined whether the District complied with the IDEA both procedurally and substantively, and correctly determined that the IEP was substantively inappropriate. Dkt. #17 at 10. The Parents also argue that the District mischaracterizes the ALJ's decision:

> The District has apparently interpreted this conclusion to mean that Judge Mentzer analyzed the facts as though there were no back-up plan at all. However, the issue was not whether any back-up plan existed, but whether the existing back-up plan was reasonably calculated to ensure that the Student would, per *Rowley*, benefit from the instruction to which she was entitled. As discussed in Section V.B.i., *infra*, there are numerous bases for Judge Mentzer's proper conclusion that the deficiency of the District's back-up plan did not satisfy the substantive requirements of the IDEA and thus denied the Student a FAPE. As such, her analysis was sound and the Order should be affirmed.

Dkt. #17 at 11. The Parents argue that the District's reliance on failure to implement cases is erroneous because this case does not involve a failure to implement issue.

The Court now finds that the ALJ applied the incorrect analysis to the issues before her. For the reasons discussed herein, the Court agrees with the District that the issue regarding a substitute nurse on days when the 1:1 nurse was absent should have been analyzed under a failure to implement standard.

The record supports this conclusion. First, the Parents' Request for Due Process Hearing states that the Student is unable to attend school without a 1:1 nurse "and school

refuses to provide one on days when regular one is absent." AR 495. This statement acknowledges an existing provision in that IEP that a 1:1 nurse be provided to the Student at school. E-mail correspondence from the Mother to the ALJ also confirms that the Parents were concerned about the implementation of an existing IEP requirement:

> . . . I am not disputing them providing a 1:1 nurse (except on the bus where she is being shared). They are. Just that they aren't providing one on days that her regular assigned nurse is unavailable.

AR 467. Further, the Mother's questioning of the District witnesses is consistent with this Court's conclusion. As demonstrated in the following example questioning of Assistant Director of Inclusive Education Holly Bailey, the Mother focused on compliance with the existing IEP:

> Q: What does it say about Student's access and use of a one-to-one licensed nurse?
>
> A: It says, "Access/Use of the following: Other, one-to-one Licensed Nurse."
>
> Q: When does it say the frequency is supposed to be?
>
> A: "Daily."
>
> Q: Does this mean every day?
>
> A: That is my understanding, every day that the school is in session.
>
> Q: And then on days that the regular nurse is absent, is an IEP always still in effect?
>
> A: Yes.
>
> Q: So is Student supposed to have a one-to-one nurse even on days when her regular nurse is absent?
>
> A: According to this, yes.

AR at 166-167.

> Q: On days when [the 1:1 nurse] is absent, are they compliant -- is the school district compliant with [the IEP's requirements]?
>
> A: When one is not available, no.

*Id.* at 177-178.

Likewise, the Mother's questioning of Executive Director of Inclusive Education John Sander, also focused on compliance.

> Q: What does it state of Student's access and use to a one-to-one nurse, frequency?
>
> A: The frequency states "daily."
>
> Q: If [the 1:1 nurse] is absent, then is a replacement put in place?
>
> A: Not at this time, no.
>
> Q: So is the school district compliant with this specific portion of the IEP?
>
> A: On those days we would not be in technical compliance with what the IEP states.

*Id.* at 185.

Finally, the Parents' notes added to the 2015-2016 IEP reflect the conclusion that they were unhappy with the way the 1:1 nurse requirement was being implemented: "Access/Use of 1:1 licensed nurse – daily – means everyday. This should include days when her regular nurse is absent." AR 723. In other words, the record as a whole reflects that the issue before the ALJ was whether the District was failing to implement the 1:1 nursing requirement on the days it did not provide such a nurse. As noted above, the District representatives agreed that on such days, it would not be in compliance with the IEP. Thus, the ALJ should have analyzed whether the failure to implement the 1:1 nurse requirement *every day* violated the IDEA.[4]

---

[4] Interestingly, despite the fact that the ALJ fond there was no back up plan for when the 1:1 nurse was absent, *see* AR 417 at ¶ 22, the Parents contend in this Court that "the issue was not whether any back-up plan existed, but whether the existing back up plan was reasonably

In *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811 (9th Cir. 2007), the Ninth Circuit Court of Appeals held that "when a school district does not perform exactly as called for by the IEP, the district does not violate the IDEA unless it is shown to have materially failed to implement the child's IEP." *Van Duyn*, 502 F.3d at 815. "A material failure occurs when there is more than a minor discrepancy between the services provided to a disabled child and those required by the IEP." *Id.* At the time the Parents filed the Due Process Hearing Request, if that occurred prior to September 28, 2015, the nurse had not been absent on any days. By the time the hearing was held in December of 2015, the nurse had only been absent on two days. AR 591. With respect to the first absence, the Parents were able to change a medical appointment to that day, to minimize the impact of the absence. With respect to the other absence, the Student stayed home. There is no evidence in the record that these two absences impeded the Student's educational progress. Thus this Court concludes that there was no material failure in implementing the IEP in the 2015-2016 school year and the District did not violate the IDEA. As a result, the Court finds that the ALJ erred in failing to analyze the issues before her under the failure to implement standard, which also resulted in the erroneous conclusion that the Student's IEP was inappropriate and that the District violated the IDEA.

## IV. CONCLUSION

For the reasons discussed above, the Court REVERSES that portion of the ALJ's decision holding that the Student's IEP for the 2015-2016 school year was substantively inappropriate and therefore denied C.M. a FAPE. To the extent the ALJ determined that the District substantively violated the IDEA, that portion of her decision is also REVERSED.

calculated to ensure that the Student would . . . benefit from the instruction to which she was entitled." Dkt. #17 at 11. That assertion also supports the Court's conclusion that the issue involved whether the District had failed to implement the requirement that a 1:1 nurse be provided *every* day.

The Clerk SHALL provide a copy of this Order to all counsel of record. This matter is now CLOSED.

DATED this 3rd day of November, 2016.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE